1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JUSTIN MENDOZA, a.k.a., AMBER RENEE MEADOWS,

                              Plaintiff,

        v.

CHARLES DANIELS, *et al.*,

                              Defendants.

Case No. 3:22-cv-00205-ART-CLB

SCREENING ORDER AND ORDER RESOLVING MOTIONS

(ECF Nos. 1-3, 3, 4, 5, 6, 7, 8)

10
11
12
13
14
15
16

    *Pro se* Plaintiff Justin Mendoza, also known as Amber Renee Meadows, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint under 42 U.S.C. § 1983 and filed an application to proceed *in forma pauperis.* (ECF Nos. 1-1, 1). Plaintiff alleges to be a female incarcerated at a male prison and uses feminine pronouns in the Complaint. (ECF No. 1-1 at 2, 3). The Court therefore uses feminine pronouns when referring to the Plaintiff in this order.

17
18
19
20
21
22
23
24

    Plaintiff filed a motion for appointment of counsel, which she has supplemented. (ECF Nos. 1-3, 7). Plaintiff also filed motions for a temporary restraining order and a preliminary injunction, a motion for a copy of her medical records, and an emergency motion for a "protection order" that the Court construes as motion for a temporary restraining order. (ECF Nos. 3, 4, 5, 6, 8). The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil-rights complaint under 28 U.S.C. § 1915A and resolves her motions for relief.

25      **I.      SCREENING STANDARD**

26
27
28

    Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the

Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and

the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations, like fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

/ / /

/ / /

3

1

## II.     SCREENING OF COMPLAINT

In her Complaint, Plaintiff sues five Defendants for events that allegedly took place while she was incarcerated at Ely State Prison ("ESP"). (ECF No. 1-1 at 1–2). Plaintiff sues Charles Daniels, Michael Minev, Ray Rivera, William Gittere, and Exxum. (*Id.* at 2). Plaintiff brings two claims and seeks injunctive and monetary relief. (*Id.* at 3–6).[1] Plaintiff alleges the following.

### A.     Factual allegations[2]

Plaintiff told Caseworker Ray Rivera, NDOC Director Charles Daniels, and ESP Warden William Gittere not to move her into a cell with Jimmy Burgos because he would rape her. (*Id.* at 3). On October 7, 2020, Defendants forced Plaintiff to move into a cell with Burgos, and she was raped by him the next day. (*Id.*) Plaintiff filed a grievance about this event. (*Id.*) Burgos and Plaintiff are not currently cellmates. (*See id.* at 6).

Plaintiff suffers from gender dysphoria. (*Id.* at 4). In June 2021, NDOC Medical Director Michael Minev prescribed hormones to treat Plaintiff's condition. (*Id.*) Exxum, a psychiatrist at ESP, interfered with Minev's orders and blocked Plaintiff from receiving her medication. (*Id.*) Being deprived of her medication, Plaintiff attempted suicide and engaged in self-harming behavior. (*Id.*) Exxum did so not for a legitimate medical purpose, but because he has a history of abusing his power and position to deny hormone therapy to prisoners. (*Id.*) And Exxum has been "hateful towards Plaintiff." (*Id.*)

Minev is aware that Exxum interfered with Plaintiff's treatment because he signed Plaintiff's second-level grievance about this issue, labeling it "resolved."

---

[1] Prisoner Roy Trost, also known as Daisy Meadows, #1027585, prepared or helped prepare the Complaint. (ECF No. 1-1 at 6).

[2] For the sake of consistency, the Court uses any position or title that Plaintiff ascribes to Defendants. This should not be construed as a finding about the truthfulness of those allegations.

(*Id.*) Plaintiff was promised that she'd be re-evaluated by an outside provider to receive hormone therapy but that has not happened. (*Id.*)

Based on these allegations, Plaintiff contends that Defendants violated her rights under the First, Eighth, and Fourteenth Amendments when they failed to protect her from another prisoner's violence and refused to provide her hormone therapy to treat her gender dysphoria. The Court liberally construes the Complaint as alleging claims based on two different theories of liability under the Eighth Amendment: (1) failure to protect Plaintiff from prisoner violence and (2) deliberate indifference to serious medical need for hormone therapy. The Court addresses each theory in turn before addressing Plaintiff's motions.

### B.   Eighth Amendment failure to protect

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state a claim for violating this duty, the plaintiff must show that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

Based on the allegations, Plaintiff—a prisoner who identifies as a female residing in a male prison—asked Rivera, Gittere, and Daniels not to house her with Burgos because he would rape her. Defendants forced Plaintiff to move into a cell with Burgos and he raped her the next day. The documents attached to the Complaint purport that Plaintiff has a lengthy history of disciplinary misconduct

1   and assaulting prison staff. (*Id.* at 12). Plaintiff did not trust Burgos and told
2   Defendants as much. (*Id.*)

3   The Court finds that these allegations are enough for screening purposes
4   to state a colorable Eighth Amendment claim that Rivera, Gittere, and Daniels
5   failed to protect her from another prisoner's violence. The Eighth Amendment
6   claim for failing to protect from prisoner violence can proceed against only Rivera,
7   Gittere, and Daniels.

8   **C.    Eighth Amendment deliberate medical indifference**

9   The Eighth Amendment prohibits the imposition of cruel and unusual
10  punishment and "embodies 'broad and idealistic concepts of dignity, civilized
11  standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).
12  A prison official violates the Eighth Amendment when he acts with "deliberate
13  indifference" to the serious medical needs of an inmate. *Farmer*, 511 U.S. at 828.
14  "To establish an Eighth Amendment violation, a plaintiff must satisfy both an
15  objective standard—that the deprivation was serious enough to constitute cruel
16  and unusual punishment—and a subjective standard—deliberate indifference."
17  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds*
18  *by Peralta v. Dillard*, 744 F.3d 176, 1082–83 (9th Cir. 2014).

19  To establish the objective prong, "the plaintiff must show a serious medical
20  need by demonstrating that failure to treat a prisoner's condition could result in
21  further significant injury or the unnecessary and wanton infliction of pain." *Jett*
22  *v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).
23  Serious medical needs include those "that a reasonable doctor or patient would
24  find important and worthy of comment or treatment; the presence of a medical
25  condition that significantly affects an individual's daily activities; or the existence
26  of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th
27  Cir. 2014).

28

1    To satisfy the subjective deliberate indifference prong, a plaintiff must show

2    "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical

3    need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096.

4    "Indifference may appear when prison officials deny, delay[,] or intentionally

5    interfere with medical treatment[;] or it may be shown by the way in which prison

6    physicians provide medical care." *Id.* (internal quotations omitted). A prison

7    official may only be held liable if he or she "knows of and disregards an excessive

8    risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

9    Cir. 2004). When a prisoner alleges that delay of medical treatment evinces

10   deliberate indifference, the prisoner must show that the delay led to further

11   injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

12   (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient

13   to state a claim of deliberate medical indifference").

14   Based on the allegations, Plaintiff suffers from gender dysphoria. Minev

15   prescribed hormone therapy to treat Plaintiff's condition. Exxum interfered with

16   Plaintiff's treatment by blocking her from receiving hormone therapy. Exxum did

17   not do so for a legitimate medical reason but because he has a history of denying

18   hormone therapy to prisoners and has been hateful to Plaintiff. Minev was aware

19   that Exxum blocked Plaintiff's hormone therapy but did nothing other than

20   resolve Plaintiff's grievance about this issue. Plaintiff was supposed to be

21   reevaluated by an outside provider for hormone therapy but that has not

22   happened. Plaintiff has attempted suicide and engaged in self-harming behavior

23   because she has not received hormone therapy to treat her gender dysphoria

24   condition.

25   The Court finds that these allegations are enough for screening purposes

26   to state a colorable claim for deliberate medical indifference against Minev and

27   Exxum. The Eighth Amendment claim for deliberate medical indifference to

28

serious medical need for hormone therapy can therefore proceed against only Minev and Exxum.

### III.   MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff moves the Court to appoint her a free attorney. (ECF Nos. 1-3, 7). A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights actions. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). The statute governing this type of litigation, 28 U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the Court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate [her] claims pro se in light of the complexity of the legal issues involved." *Id.* "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

The Court finds that exceptional circumstances warrant the appointment of counsel here. Plaintiff states a colorable claim for deliberate medical indifference that is novel and complex and might require expert medical opinions. Based on the information provided in the Complaint, it appears that Plaintiff's ability to litigate her claim could be greatly enhanced by the assistance of counsel. The Court therefore refers this case to the Pro Bono Program adopted in the Second Amended General Order 2019-07 for the purpose of screening for financial eligibility, if necessary, and identifying counsel willing to be appointed as pro bono counsel for Plaintiff. The scope of appointment will be for all purposes through the conclusion of trial, if possible. By referring this case to the Program, the Court is not expressing an opinion as to the merits of the case. And Plaintiff is cautioned that she will be responsible for complying with all deadlines set by the Court unless and until counsel is appointed.

### IV.   MOTION FOR MEDICAL RECORDS

Plaintiff moves for an order requiring Defendants to provide a free copy of her medical records to keep in her cell during litigation. (ECF No. 6). Plaintiff reasons that her motion is meritorious because similar motions in other *pro se* prisoner civil-rights actions have been granted in this District. (*Id.* at 2 (listing cases)). Plaintiff explains that the courts in those cases interpreted AR 639.02(8) as requiring the NDOC to provide prisoners who are involved in medical litigation a copy of their medical records to use in their cell or on the yard. (*Id.*) But Plaintiff does not argue the version of the regulation that was interpreted in those cases is still in effect today. Nor does Plaintiff argue that she requested access to her medical records and her request was denied. Plaintiff seeks the entirety of her medical records without concern for whether they are relevant to this litigation, which is still in the screening stage. And Plaintiff seeks a free copy of those records, but the Court has not yet determined that she is indigent.

The Court finds that Plaintiff's request for a free copy of all her medical records is overly broad, premature, and unsupported. Moreover the Court has referred this case to the Pro Bono Program. If counsel is located, they can assist Plaintiff in obtaining a copy of her relevant medical records. The Court therefore denies without prejudice Plaintiff's motion.

### V.   MOTIONS FOR PRETRIAL EQUITABLE RELIEF

#### A.   Legal standards for injunctions and restraining orders

Restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary restraining order and the legal standard for obtaining a preliminary injunction are "substantially identical." *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. at 20. The Supreme Court clarified the standard for these forms of equitable relief in *Winter*

1    *v. Natural resources Defense Council, Inc.*, instructing that the plaintiff "must

2    establish that [she] is likely to succeed on the merits, that [she] is likely to suffer

3    irreparable harm in the absence of preliminary relief, that the balance of equities

4    tips in [her] favor, and that an injunction [or restraining order] is in the public

5    interest." 555 U.S. at 20. The Ninth Circuit also recognizes an additional

6    standard: "if a plaintiff can only show that there are 'serious questions going to

7    the merits'—a lesser showing than likelihood of success on the merits—then a

8    preliminary injunction may still issue if the 'balance of hardships tips *sharply* in

9    the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *Shell Offshore,*

10    *Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (2013) (quoting *Alliance for the Wild*

11    *Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

12        A plaintiff who seeks a mandatory injunction—one that goes beyond simply

13    maintaining the status quo during litigation—bears a "doubly demanding"

14    burden: "she must establish that the law and facts *clearly favor* her position, not

15    simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740

16    (9th Cir. 2015) (en banc). The Ninth Circuit has cautioned that mandatory

17    injunctions are "particularly disfavored" and "should not issue in doubtful cases."

18    *Id.* (internal quotations omitted). The PLRA instructs that any restraining order

19    or preliminary injunction granted with respect to prison conditions "must be

20    narrowly drawn, extend no further than necessary to correct the harm the court

21    finds requires preliminary relief, and be the least intrusive means necessary to

22    correct that harm." 18 U.S.C. § 3626(a)(2).

23        Finally, "there must be a relationship between the injury claimed in the

24    motion for injunctive relief and the conduct asserted in the underlying

25    complaint." *Pac. Radiation Oncology, LLC v. Queen's Medical Ctr.*, 810 F.3d 631,

26    636 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised

27    in a motion for injunctive relief and the claims in the underlying complaint itself."

28    *Id.* The necessary connection is satisfied "where the preliminary injunction would

1   grant 'relief of the same character as that which may be granted finally.'" *Id.*

2   (quoting *De Beers Consol. Mines*, 325 U.S. 212, 220 (1945)). "Absent that

3   relationship or nexus, the district court lacks authority to grant the relief

4   requested." *Id.*

5       **B.   Discussion**

6       Plaintiff moves the Court for an order requiring Defendants to (1) keep

7   Plaintiff housed with her current cellmate, (2) provide Plaintiff hormone therapy

8   to treat her gender dysphoria, and (3) transfer Plaintiff and her cellmate to

9   another prison, preferably a women's prison. (ECF Nos. 3, 4, 5, 8). Plaintiff's

10  motions fail because she does not address any of the *Winter* factors and other

11  standards applicable to her requests. Even if the Court looked past this fatal

12  defect, it would still deny the motions because there isn't a sufficient nexus

13  between most of the relief sought in them and the claims alleged in the Complaint.

14  The Court cannot conclude on this record that serious questions exist as to the

15  merits of Plaintiff's medical-indifference claim, let alone that the law and facts

16  clearly favor her position. And the Court is not persuaded that the relief sought

17  is the least intrusive means to protect Plaintiff from the potential harm caused

18  by other prisoners or indifference to her medical needs.

19      **1.   Insufficient nexus**

20      Plaintiff's motions contain disturbing reports about violence she

21  experienced at the hands of prison staff many years ago because of her gender

22  dysphoria condition—the last event appears to have occurred in 2016. (ECF No.

23  3 at 8–12). They also contain troubling reports about adverse actions that prison

24  staff recently took against her for filing grievances and lawsuits about staff

25  misconduct. (ECF No. 5 at 2–5). To remedy these injuries, Plaintiff seeks an order

26  requiring Defendants to keep her housed with her current cellmate and transfer

27  both to another prison. To obtain this relief, there must be a sufficient nexus

28  between the injuries stated in the motions and those claimed in the Complaint.

Plaintiff alleges colorable claims that prison staff failed to protect her from another prisoner's violence and were deliberately indifferent to her need for hormone therapy. Plaintiff's argument that prison officials took adverse action against her for filing administrative grievances or lawsuits is a separate claim under the First Amendment and not connected to either claim in the Complaint. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (setting forth the elements of a retaliation claim); *Entler v. Gregorie*, 872 F.3d 1031, 1039 (9th Cir. 2017) (same). Plaintiff's argument that prison officials used excessive force against her is also a separate claim under the Eighth Amendment and not connected to either claim in the Complaint. *See Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (explaining what constitutes excessive force under the Eighth Amendment). Because there isn't a sufficient relationship between the injuries identified in the motions and those claimed in the Complaint, the Court lacks authority to order Plaintiff be housed with her current cellmate or transferred to another prison.

If Plaintiff wants to redress the acts of retaliation and excessive force identified in her motions, she should file a civil-rights complaint under § 1983 in a new action or move for leave to file an amended complaint in this action. Plaintiff is cautioned that either way, her claims are subject to the PLRA's mandate that prisoners exhaust the administrative remedies that are available to them before bringing an action on claims about prison conditions. 42 U.S.C. § 1997e(a); *see Booth v. Churner*, 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007).

### 2.   Success on the merits

What remains is Plaintiff's argument that Defendants continue denying her hormone therapy to treat her gender dysphoria condition. (ECF No. 5 at 4). There is a sufficient nexus between this injury and Plaintiff's medical-indifference claim, which the Court found to be colorable. But simply stating a colorable claim is not

1   enough to show that a restraining order or injunction should issue under any

2   standard. Plaintiff did not provide any evidence with her motions to support her

3   medical-indifference claim, but she did attach grievance records and medical

4   kites to her Complaint for that purpose.

5         Those documents paint the picture that Plaintiff did not consistently take

6   her mental-health medications. (*See* ECF No. 1-1 at 45–160). Prison medical

7   administrators opined that Plaintiff needed to show consistency with her mental-

8   health medications before hormone therapy could be considered an appropriate

9   course of treatment for her. (*Id.*) And prison medical administrators ordered a

10  second evaluation to occur with an outside provider to determine if hormone

11  therapy is appropriate for Plaintiff. (*Id.*) The Court finds that the documents

12  attached to the Complaint are at best neutral to Plaintiff's position that

13  Defendants have been deliberately indifferent to her need for hormone therapy.

14  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (explaining that a

15  difference of opinion between medical professionals about the appropriate course

16  of treatment generally does not amount to deliberate medical indifference);

17  *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981)

18  (explaining that a difference of opinion between a prisoner-patient and prison

19  medical authorities does not give rise to a § 1983 claim).

20        To issue a mandatory injunction requiring Defendants to provide Plaintiff

21  with hormone therapy, the Court must find that the law and facts clearly favor

22  Plaintiff's position that Defendants have been deliberately indifferent to her need

23  for that treatment. The Court cannot conclude on this record that there are

24  serious questions going to the merits of Plaintiff's medical-indifference claim, let

25  alone that the law and facts clearly favor her position. Plaintiff's motions for a

26  restraining order and a preliminary injunction are therefore denied in their

27  entirety.

28

**VI.    CONCLUSION**

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Eighth Amendment claim for failing to protect from prisoner violence can proceed against only Defendants Ray Rivera, William Gittere, and Charles Daniels.

It is further ordered the Eighth Amendment claim for deliberate medical indifference to serious medical need for hormone therapy can proceed against only Defendants Michael Minev and Exxum.

It is further ordered that Plaintiff's motion for appointment of counsel (ECF Nos. 1-3, 7) is granted. This case is referred to the Pro Bono Program for appointment of counsel for the purposes identified herein. Plaintiff shall be responsible for complying with all deadlines set by the Court until and unless counsel is appointed. If counsel is not appointed **by October 15, 2022,** any party may move the Court to hold a status conference to address the matter of securing counsel for Plaintiff.

It is further ordered that given the nature of the claims that the Court has permitted to proceed, this action is **STAYED** for 120 days to allow Plaintiff and Defendants an opportunity to settle their dispute before the $350 filing fee is paid, an answer is filed, or the discovery process begins. **During this 120-day stay period and until the Court lifts the stay, no other pleadings or papers will be filed in this case**, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 120 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 120-day stay, even if a stipulation for

1  dismissal is entered prior to the end of the 120-day stay. If the parties proceed

2  with this action, the Court will then issue an order setting a date for Defendants

3  to file an answer or other response. Following the filing of an answer, the Court

4  will issue a scheduling order setting discovery and dispositive motion deadlines.

5  It is further ordered that "settlement" may or may not include payment of

6  money damages. It also may or may not include an agreement to resolve Plaintiff's

7  issues differently. A compromise agreement is one in which neither party is

8  completely satisfied with the result, but both have given something up and both

9  have obtained something in return.

10  It is further ordered that if the case does not settle, Plaintiff will be required

11  to pay the full $350 statutory filing fee for a civil action. This fee cannot be waived,

12  and the fee cannot be refunded once the Court enters an order granting Plaintiff's

13  application to proceed *in forma pauperis*. If Plaintiff is allowed to proceed *in forma*

14  *pauperis*, the fee will be paid in installments from her prison trust account. *See*

15  28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the

16  full $350 statutory filing fee for a civil action plus the $52 administrative filing

17  fee, for a total of $402, will be due immediately.

18  It is further ordered that if any party seeks to have this case excluded from

19  the inmate mediation program, that party will file a "motion to exclude case from

20  mediation" no later than 21 days prior to the date set for mediation. The

21  responding party will have 7 days to file a response. No reply will be filed.

22  Thereafter, the Court will issue an order, set the matter for hearing, or both.

23  It is further ordered that if Plaintiff needs an interpreter to participate in

24  the mediation program, Plaintiff will file a notice identifying the interpretation

25  language and the need for the interpreter within 30 days from the date of this

26  order.

27  It is further ordered that the Attorney General's Office must advise the

28  Court within 21 days of the date of the entry of this order whether it will enter a

limited notice of appearance on behalf of the Interested Party identified below for the purpose of participating in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

It is further ordered that Plaintiff's motion for a copy of her medical records (ECF No. 6) is denied without prejudice.

It is further ordered that Plaintiff's motions for a temporary restraining order and a preliminary injunction (ECF Nos. 3, 4, 5, 8) are denied.

Finally, the Clerk of the Court is directed to:

- Forward a copy of this order to the Pro Bono Liaison;
- Send Plaintiff a courtesy copy of the Complaint (ECF No. 1-1); and
- Add the Nevada Department of Corrections to the docket as an Interested Party and electronically serve a copy of this order and a copy of the Complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada by adding the Attorney General to the Interested Party on the docket. This does not indicate acceptance of service.

DATED THIS 16th day of August 2022.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

16

1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5

6

7

8

JUSTIN   MENDOZA,   a.k.a.,   AMBER
RENEE MEADOWS,

                                        Plaintiff,

         v.

CHARLES DANIELS, *et al.*,

                                        Defendants.

Case No. 3:22-cv-00205-ART-CLB

REPORT OF ATTORNEY GENERAL
RE: RESULTS OF 90-DAY STAY

9

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS
FORM.    THE   INMATE   PLAINTIFF   WILL   NOT   FILE   THIS   FORM.**

10

11

12

13

         On _____ [*enter date*], the Court issued its screening order
under 28 U.S.C. § 1915A and allowed certain specified claims to proceed.  The
Court ordered the Office of the Attorney General of the State of Nevada to file a
report 120 days after the date of the entry of the Court's screening order to
indicate the status of the case at the end of the 120-day stay.  By filing this form,
the Office of the Attorney General hereby complies.

14

15

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes
the case, and follow the instructions corresponding to the proper statement.]

16

17

**Situation One: Mediated Case**: **The case was assigned to mediation by a
court-appointed mediator during the stay.**  [If this statement is accurate,
check **ONE** of the six statements below and fill in any additional information as
required, then proceed to the signature block.]

18

19

20

21

22

         ____    A mediation session with a court-appointed mediator was held on
                 _____ [*enter date*], and as of this date, the parties have
                 reached  a  settlement  (*even  if  paperwork  to  memorialize  the
                 settlement remains to be completed*).  (*If this box is checked, the
                 parties  are  on  notice  that  they  must  SEPARATELY  file  either  a
                 contemporaneous stipulation of dismissal or a motion requesting
                 that the Court continue the stay in the case until a specified date upon
                 which they will file a stipulation of dismissal.*)

23

24

         ____    A mediation session with a court-appointed mediator was held on
                 _____ [*enter date*], and as of this date, the parties have
                 not  reached  a  settlement.    The  Office  of  the  Attorney  General
                 therefore informs the Court of its intent to proceed with this action.

25

26

27

         ____    No mediation session with a court-appointed mediator was held
                 during the stay, but the parties have nevertheless settled the case.
                 (*If this box is checked, the parties are on notice that they must
                 SEPARATELY file a contemporaneous stipulation of dismissal or a*

28

_motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal_.)

____ No mediation session with a court-appointed mediator was held during the stay, but one is currently scheduled for _____ [_enter date_].

____ No mediation session with a court-appointed mediator was held during the stay, and as of this date, no date certain has been scheduled for such a session.

____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (_even if the paperwork to memorialize the settlement remains to be completed_). (_If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal_.)

____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of the above three statements fully describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                          Print                                       Signature

Address: _____          Phone:_____

_____          Email:_____

2