MARGARET A. MCLETCHIE, Nevada Bar No. 10931
LEO S. WOLPERT, Nevada Bar No. 12658
**MCLETCHIE LAW**
602 South Tenth Street
Las Vegas, NV 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JUSTIN MENODZA, aka AMBER RENEE MENDOZA,<br><br>                         Plaintiff,<br><br>         vs.<br><br>CHARLES DANIELS, et. al.<br><br>                         Defendants. | **Case No.:** 3:22-cv-00205-ART-CLB<br><br>**CONSOLIDIATED AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**(Lead Case)** [1] |
| ROY TROST, aka DAISY LYNN MEADOWS,<br><br>                         Plaintiff,<br><br>         vs.<br><br>NEVADA BOARD OF PRISON COMMISSIONERS, et. al.<br><br>                         Defendants. | **Case No.:** 3:22-cv-0214-ART-CSD |
| ROY TROST, aka DAISY LYNN MEADOWS,<br><br>                         Plaintiff,<br><br>         vs.<br><br>TASHEENA COOKE, et. al.<br><br>                         Defendants, | **Case No.:** 3:22-cv-0320-ART-CLB |

---

[1] For ease of reading and to comply with FRCP 10(a), all Defendants in this Consolidated Complaint are enumerated in the caption's bottom case.

JUSTIN MENODZA, aka AMBER RENEE
MENDOZA, and ROY TROST, aka DAISY
LYNN MEADOWS,

1
2

           Plaintiffs

3

      vs.

4

STATE OF NEVADA ex. rel. BOARD OF
PRISON COMMISSIONERS; STATE OF
NEVADA ex. rel. NEVADA DEPARTMENT
OF CORRECTIONS; JOSEPH LOMBARDO,
in his official capacity; AARON FORD, in his
official capacity; CISCO AGUILAR, in his
official capacity; DAVID RIVAS, in his official
capacity; DAVID GREENE, in his official
capacity; JAMES DZURENDA, in his official
capacity, BRIAN WILLIAMS, in his individual
and official capacities; CHARLES DANIELS,
in his individual capacity; MICHAEL MINEV,
in his individual capacity; WILLIAM
GITTERE, in his individual capacity; DAVID
DRUMMOND, in his individual capacity;
ROBERT HARTMAN, in his individual
capacity; WILLIAM REUBART, in his
individual capacity; TASHEENA COOKE, in
her individual capacity; DEBORAH
STRIPLIN, in her individual capacity; WADE
EXUM, in his individual capacity; DOCTOR
SAUNDERS, in her individual capacity;
JESSICA RAMBUR, in her individual
capacity; STACY PERKINS, in her individual
capacity; KRISTINA HAYMAN, in her
individual capacity; RENEE TAFELMEYER,
in her individual capacity; JEREMY
TAFELMEYER, in her individual capacity;
RAY RIVERA, in his individual capacity;
MICHAEL ADAMS, in his individual capacity;
DAVID HARRY, in his individual capacity;
BRANDON STUBBS, in his individual
capacity; CHRISTOPHER CORNUTT, in his
individual capacity; STELYN MAURO, in her
individual capacity; NETANJAH
BREITENBACH, in her individual capacity;
MICHAEL FLAMM, in his individual capacity;
JACOB TOBLER, in his individual capacity;

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Case No.:** 3:22-cv-0369-ART-CSD

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) ; (702)425-8220 (F)
WWW.NVLITIGATION.COM

KIRK WIDMAR, in his individual capacity;
BOBBY PRESTON, in his individual capacity;
CORRECTIONAL OFFICER LB1, in his
individual capacity,

Defendants.

## CONSOLIDIATED AMENDED COMPLAINT

Plaintiffs DAISY LYNN MEADOWS, fka ROY TROST ("Plaintiff Meadows" or "Ms. Meadows") and AMBER MENDOZA fka JUSTIN MENDOZA ("Plaintiff Mendoza" or "Ms. Mendoza")[2], individuals, file this Consolidated Amended Complaint for damages, declaratory relief, and injunctive relief pursuant to 42 U.S.C § 1983 (civil action for deprivation of rights), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C § 1367(a) (supplemental jurisdiction) and 28 U.S.C. § 2201 (creation of remedy).

## I.    NATURE OF THE ACTION

This is an action under 42 U.S.C. § 1983 and the Nevada Constitution seeking to address the violations of Plaintiffs' constitutional rights and seeking relief for related state tort claims. Ms. Meadows and Ms. Mendoza were assigned the male gender at birth, but are transgender women. During their incarceration, the Nevada Department of Corrections ("NDOC") and various individuals associated with NDOC have been deliberatively indifferent to the medical needs of Ms. Meadows and Ms. Mendoza, and have denied them medically appropriate treatment. Specifically, NDOC has refused Plaintiffs necessary treatment for Gender Dysphoria ("GD") and other medically necessary treatment. This occurred even though Ms. Meadows and Ms. Mendoza have been diagnosed with GD—as well as severe injuries to their physical and mental health—while incarcerated at NDOC facilities. During their incarcerations at various NDOC facilities, NDOC and the associated individual defendants have not only denied Plaintiffs medical care, but have also subjected Ms. Meadows and Ms. Mendoza to abuse, retaliation, and other violations of their constitutional and statutory rights. NDOC and its officials and employees have violated Plaintiffs' rights by, *inter alia*:

---

[2] Plaintiffs are referred to herein by their female names and pronouns.

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) (702)425-8220 (F)
WWW.NVLITIGATION.COM

- Based on an unconstitutional blanket policy, refusing to consider and provide Gender Confirming Surgery ("GCS");

- Arbitrarily modifying and/or refusing Plaintiffs' hormone replacement therapy ("HRT") regimens and refusing to provide and/or delaying doctor-prescribed HRT;

- Refusing to place Plaintiffs in appropriate, safe, sanitary housing and subjecting them to known risks, resulting in Plaintiffs repeatedly being assaulted; and

- Denying Plaintiffs other health care.

Plaintiffs are entitled to relief for these violations of the United States Constitution, Nevada Constitution, and statute. Plaintiffs are further entitled to injunctive and declaratory relief against the Board of State Prison Commissioners, the current Medical Director and Mental Health Director, and the warden of the institution at which they are currently incarcerated.

## II.    **JURISDICTION AND VENUE**

1.    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 *et seq.* for civil claims arising under the Constitution and laws of the United States. Pursuant to § 1331, this Court has original subject matter jurisdiction over Plaintiffs' claims brought under 42 U.S.C. § 1983.

2.    This Court has jurisdiction over claims arising under the laws of the State of Nevada pursuant to supplemental jurisdiction provided for by 28 U.S.C. § 1367(a).

3.    The prayer for relief is predicated on 28 U.S.C. § 2201 and Fed. R. Civ. P. 38. This Court has jurisdiction to award Plaintiffs damages pursuant to 42 U.S.C. § 1983 and Nev. Rev. Stat. § 41.130. Authorization for the request of attorneys' fees and costs is conferred by 42 U.S.C. § 1988(b).

4.    Each of the Defendants acted, purported to act, and/or pretended to act in the performance of their official duties, and thus each of the Defendants acted under color of law and are subject to liability as state actors pursuant to 42 U.S.C. § 1983. *See McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).

5.    Because Defendants are not arms of the State this suit is not barred by the

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1   Eleventh Amendment to the U.S. Constitution. *See Eason v. Clark County School Dist.*, 303

2   F.3d 1137, 1147 (9th Cir. 2002); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 619

3   (9th Cir. 1999).

4       6.      This Court is the proper venue for this action pursuant to 28 U.S.C §

5   1931(b)(2), as all claims arise from events that took place in Nevada.

6   ## III.      PARTIES

7   **PLAINTIFF DAISY MEADOWS**

8       7.      Ms. Meadows, NDOC inmate #1027585, is an individual who has been

9   housed at several NDOC facilities.

10      8.      Ms. Meadows was at all relevant times a prisoner under the supervision and

11  care of the Nevada Department of Corrections ("NDOC").

12      9.      Ms. Meadows was first transferred to the custody of NDOC in 2008.

13      10.     Until June of 2017, NDOC denied Ms. Meadows any real treatment for GD,

14  as it then refused to provide any meaningful treatment other than hormones, which it only

15  provided to inmates who could prove they were prescribed hormones prior to incarceration.

16      11.     On or around June 7, 2017, Ms. Meadows was moved to Idaho State

17  Correctional Institution in Kuna, Idaho, in the custody of the Idaho Department of

18  Corrections, pursuant to a contract between the State of Nevada and the State of Idaho for

19  the implementation of the Interstate Corrections Compact.

20      12.     While incarcerated in Idaho, Ms. Meadows was provided with treatment for

21  GD, including hormones and access to personal care items that are appropriate for her gender,

22  such as bras.

23      13.     While these interventions temporarily abated Ms. Meadows' GD

24  symptoms, they did not provide sufficient relief.

25      14.     In 2018, while housed in solitary confinement, Ms. Meadows's GD was so

26  severe she attempted to remove her male genitalia—which she describes as a "birth defect"—

27  with a razor.

28      15.     In November 2019, Ms. Meadows was transferred from the custody of the

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Idaho State Department of Corrections back to Northern Nevada Correctional Center ("NNCC").

16.     In December 2019, Ms. Meadows was transferred from NNCC to Lovelock Correctional Center ("LCC").

17.     In January 2021, Ms. Meadows was transferred from LCC to NNCC.

18.     In December, 2021, Ms. Meadows was transferred from NNCC to Ely State Prison ("ESP").

19.     In September, 2022, Ms. Meadows was transferred from ESP to High Desert State Prison ("HDSP"), where she is currently incarcerated under the authority of the State of Nevada.

**PLAINTIFF AMBER MENDOZA**

20.     Ms. Mendoza, NDOC inmate #1079266, is an individual who has been housed at several NDOC facilities.

21.     Ms. Mendoza was at all relevant times a prisoner under the supervision and care of NDOC.

22.     Ms. Mendoza was incarcerated at ESP until 2016, when she was transferred to LCC.

23.     Ms. Mendoza was transferred between LCC, ESP, and NNCC multiple times between 2016 and 2022.

24.     In 2022, Ms. Mendoza was transferred to HDSP, where she is currently incarcerated under the authority of the State of Nevada.

**DEFENDANTS**

25.     The State of Nevada ex rel. Nevada Department of Corrections ("NDOC") operates the correctional facilities where the Plaintiffs are currently located. NDOC is an executive agency within the Nevada government.

26.     The Board of State Prison Commissioners (the "Board") has the duty to purchase, or cause to be purchased, all commissary supplies, materials and tools necessary for any lawful purpose carried on at any NDOC institution. NRS 209.111(1). The Board of

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

State Prison Commissioners also has the duty to prescribe regulations for carrying on NDOC's business. NRS 209.111(3).

27.    Defendant Joseph Lombardo is the Governor of the State of Nevada. As Governor, Lombardo is a member of the Board.  Mr. Lombardo is sued in his official capacity.

28.    Defendant Aaron Ford is the Attorney General of the State of Nevada. As Attorney General, Ford is a member of the Board. Mr. Ford is sued in his official capacity.

29.    Defendant Cisco Aguilar is the Secretary of State of Nevada. As Secretary of State, Aguilar is a member of the Board. Mr. Aguilar is sued in his official capacity.

30.    Defendants Lombardo, Ford, and Aguilar are referred to herein as "Commissioner Defendants."

31.    Upon information and belief, Defendant David Rivas is the current Medical Director of NDOC. As the current Medical Director of NDOC, he is responsible for ensuring both a medical and psychological evaluation for each inmate and that an appropriate plan has been established and is complied with by Medical and Mental Health Staff. Dr. Rivas is sued in his official capacity.

32.    Upon information and belief, Defendant David Greene is the current Mental Health Director of NDOC. As the current Mental Health Director of NDOC, he is responsible for ensuring both a medical and psychological evaluation for each inmate and that an appropriate plan has been established and is complied with by Medical and Mental Health Staff. Dr. Greene is sued in his official capacity.

33.    Defendants Rivas and Greene are referred to herein as the "Medical Director Defendants."

34.    Upon information and belief, Defendant James Dzurenda is the current Director of NDOC. As the current Director of NDOC, he is responsible for the establishment of all Departmental policies to ensure public, staff, and inmate safety. Mr. Dzurenda is sued in his official capacity.

35.    Upon information and belief, Defendant Brian Williams is the current

warden of HDSP, where Plaintiffs are currently incarcerated. As the current warden of HDSP, he is responsible for ensuring that all HDSP inmates have access to evaluation, placement, and appropriate treatment. Furthermore, upon information and belief, Mr. Williams was Deputy Director of Programs in December, 2021. Mr. Williams is sued in his official and individual capacities.

36.    Defendants Dzurenda and Williams are referred to herein as the "Administrator Defendants."

37.    Upon information and belief, Defendant Charles Daniels was Director of NDOC until his resignation in September, 2022. Mr. Daniels is sued in his individual capacity.

38.    Upon information and belief, Defendant Michael Minev was Medical Director of NDOC during the relevant events described herein. Dr. Minev is sued in his individual capacity.

39.    Upon information and belief, Defendant William Gittere was employed by NDOC as Warden of ESP during the relevant events described herein. Mr. Gittere is sued in his individual capacity.

40.    Upon information and belief, Defendant David Drummond was employed by NDOC as Associate Warden of ESP during the relevant events described herein. Mr. Drummond is sued in his individual capacity.

41.    Upon information and belief, Defendant Robert Hartman was employed by NDOC as Associate Warden of NNCC during the relevant events described herein. Mr. Hartman is sued in his individual capacity.

42.    Upon information and belief, Defendant William Reubart was employed by NDOC as Associate Warden of ESP during relevant events described herein. Mr. Reubart is sued in his individual capacity.

43.    Upon information and belief, Defendant Tasheena Cooke was employed by NDOC as a Correctional Case Work Specialist and Associate Warden assigned to ESP during relevant events described herein. Ms. Cooke is sued in her individual capacity.

44.    Upon information and belief, Defendant Deborah Striplin was employed by NDOC as a Program Officer assigned to NNCC during the relevant events described herein. Ms. Striplin is sued in her individual capacity.

45.    Upon information and belief, Defendant Wade Exum was a medical doctor contracted by NDOC to perform psychiatric services on NDOC inmates at ESP during the relevant events described herein, and was therefore acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 53-54, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam). Dr. Exum is sued in his individual capacity.

46.    Upon information and belief, Defendant Doctor Saunders (First Name Unknown) was a medical doctor employed at or contracted by NDOC to perform medical services on NDOC inmates at NNCC during the relevant events described herein, and was therefore acting under color of state law. Dr. Saunders is sued in her individual capacity.

47.    Upon information and belief, Defendant Jessica Rambur was employed by NDOC as a Correctional Nurse assigned to NNCC during the relevant events described herein. Ms. Rambur is sued in her individual capacity.

48.    Upon information and belief, Defendant Stacy Perkins was employed by NDOC as a Correctional Nurse assigned to NNCC during the relevant events described herein. Ms. Perkins is sued in her individual capacity.

49.    Upon information and belief, Defendant Kristina Hayman was employed by NDOC as a Mental Health Counselor assigned to ESP during the relevant events described herein. Ms. Hayman is sued in her individual capacity.

50.    Upon information and belief, Defendant Renee Tafelmeyer was employed by NDOC as a Corrections Officer assigned to NNCC during the relevant events described herein. Mrs. Tafelmeyer is sued in her individual capacity.

51.    Upon information and belief, Defendant Jeremy Tafelmeyer was employed by NDOC as Corrections Officer assigned to NNCC during the relevant events described herein. Mr. Tafelmeyer is sued in his individual capacity.

9

52. Upon information and belief, Defendant Ray Rivera was employed by NDOC as a Correctional Case Work Specialist assigned to ESP during the relevant events described herein. Mr. Rivera is sued in his individual capacity.

53. Upon information and belief, Defendant Michael Adams was employed by NDOC as a Correctional Officer assigned to ESP during the relevant events described herein. Mr. Adams is sued in his individual capacity.

54. Upon information and belief, Defendant David Harry was employed by NDOC as a Correctional Officer assigned to ESP during the relevant events described herein. Mr. Harry is sued in his individual capacity.

55. Upon information and belief, Defendant Brandon Stubbs was employed by NDOC as a Correctional Officer assigned to ESP during the relevant events described herein. Mr. Stubbs is sued in his individual capacity.

56. Upon information and belief, Defendant Christopher Cornutt was employed by NDOC as a Correctional Officer assigned to ESP during the relevant events described herein. Mr. Cornutt is sued in his individual capacity.

57. Upon information and belief, Defendant Stelyn Mauro was employed by NDOC as a Correctional Officer assigned to ESP during the relevant events described herein. Ms. Mauro is sued in her individual capacity.

58. Upon information and belief, Defendant Nethanjah Breitenbach (nee Childers) was employed by NDOC as a Correctional Case Worker assigned to NNCC during the relevant events described herein. Ms. Breitenbach is sued in her individual capacity.

59. Upon information and belief, Defendant Michael Flamm was employed by NDOC as a Correctional Sergeant assigned to NNCC during the relevant events described herein. Mr. Flamm is sued in his individual capacity.

60. Upon information and belief, Defendant Jacob Tobler was employed by NDOC as a Correctional Officer assigned to LCC during the relevant events described herein. Mr. Tobler is sued in his individual capacity.

61. Upon information and belief, Defendant Kirk Widmar was employed by

1  NDOC as a Correctional Lieutenant assigned to LCC during the relevant events described

2  herein. Mr. Widmar is sued in his individual capacity.

3          62.    Upon information and belief, Defendant Bobby Preston was employed by

4  NDOC as a Correctional Lieutenant assigned to LCC during the relevant events described

5  herein. Mr. Preston is sued in his individual capacity.

6          63.    Upon information and belief, Defendant LBI was employed by NDOC as a

7  Correctional Officer assigned to LCC during the relevant events described herein. LBI is

8  being sued under a fictitious name, and Plaintiffs reserve the right to substitute LBI's real

9  name once it is provided in discovery. LBI is sued in his individual capacity.

10         64.    The naming of Defendants herein is based upon information and belief.

11 Plaintiffs reserve their right to name additional defendants and modify their allegations

12 concerning defendants named herein. Plaintiffs further reserve their right to amend these

13 allegations to identify by name any other person or persons they learn has responsibility for

14 violations of their rights detailed in this Complaint.

15              **IV.    FACTUAL ALLEGATIONS**

16 **GENERAL FACTS REGARDING GENDER DYSPHORIA.**

17         65.    Plaintiffs were assigned the male sex at birth, but are transgender woman.

18         66.    Plaintiffs suffer from gender dysphoria ("GD"). The American Psychiatric

19 Association published a revised version of its Diagnostic and Statistical Manual of Mental

20 Disorders ("DSM-V") in 2013, which replaced the "gender identity disorder" diagnosis with

21 "gender dysphoria." The DSM-V characterizes the diagnosis of gender dysphoria as follows:

22 "[i]ndividuals with gender dysphoria have a marked incongruence between the gender they

23 have been assigned to (usually at birth, referred to as natal gender) and their

24 experienced/expressed gender." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of

25 Mental Disorders 453 (5th ed. 2013) ("DSM-V"). In addition to this marked incongruence,

26 "[t]here must also be evidence of distress about this incongruence." *Id.*

27         67.    Both Hormone Replacement Therapy ("HRT") and Gender Confirming

28 Surgery ("GCS"), which involves, *inter alia*, reconstructing the genitalia to conform in

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

appearance and function to that typically associated with the person's gender identity, can be medically necessary to treat GD, as can allowing a person to express herself in the gender she feels comfortable.

68.    For some, such as Plaintiffs, "surgery is essential and medically necessary to alleviate their gender dysphoria." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 770 (9th Cir. 2019) (quoting World Professional Association of Transgender Health ("WPATH") Standards of Care); *see also Kosilek v. Maloney*, 221 F. Supp. 2d 156, 159 (D. Mass. 2002) ("There are, however, some cases in which sex reassignment surgery is medically necessary and appropriate.")

69.    Despite the fact that Plaintiffs have been diagnosed with GD, NDOC and Defendants have refused to provide Plaintiffs with adequate medical care for that condition, have rarely housed them appropriately, and have subjected them to danger for assault (which, in fact, resulted in Plaintiffs being repeatedly assaulted).

70.    As a result, Plaintiffs' GD has been exacerbated, and Plaintiffs suffered and suffer extreme discomfort and emotional distress.

**NDOC's Relevant Policies.**

71.    Administrative Regulation 494 ("AR 494") describes NDOC's policies regarding transgender and intersex inmates.

72.    According to AR 494, the Director of NDOC is responsible for the establishment of all Departmental policies to ensure public, staff, and inmate safety.

73.    According to AR 494, an institution's Warden or designee is responsible to ensure that all inmates have access to evaluation, placement, and appropriate treatment while recognizing the inherent limitations of resources, and the need to maintain facility security, order and discipline, and the health and safety of all inmates.

74.    According to AR 494, the Medical Director and Mental Health Director have the responsibility to ensure both a medical and psychological evaluation for each inmate and that an appropriate plan has been established and is complied with by Medical and Mental Health Staff.

75.    Medical Directive 121 ("MD 121") describes NDOC's policies regarding the evaluation and treatment of inmates with GD.

76.    Before October 2017, MD 121 banned "initiation of chemical or hormonal treatment for sexual reassignment, progression of such treatment to a new level, and surgical (including cosmetic) procedures directed toward sexual reassignment." Essentially, this blanket policy prevented inmates who were first diagnosed with GD in prison—or were not receiving medical treatment for GD at the time they were first incarcerated—from receiving any medical treatment for GD. As such, it was unconstitutional.

77.    As a result of prior litigation involving Ms. Meadows, AR 494 was modified in 2017 and again in 2020.

78.    As a result of prior litigation involving Ms. Meadows, MD 121 was modified in 2018 to provide treatment for inmates who receive GD diagnoses after incarceration. However, MD 121 remains problematic and inconsistent with ensuring NDOC does not act deliberatively indifferent to GD.

79.    Indeed, the only treatment contemplated by MD 121 is Hormone Replacement Therapy ("HRT").

80.    However, the Ninth Circuit held that when the medically necessary treatment for a prisoner's gender dysphoria is Gender Confirmation Surgery ("GCS"), and responsible prison officials deny such treatment with full awareness of the prisoner's suffering, those officials violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 803 (9th Cir. 2019).

81.    Notably, attempts at removing one's non-gender-conforming genitalia indicate that GCS is a more medically appropriate treatment for GCS, not less. *See generally Edmo*, 935 F.3d 757 (affirming district court's injunction mandating GCS for inmate who had previously attempted self-castration).

82.    As a policy matter, NDOC never considers and/or provides GCS to transgender inmates.

83.    As a matter of unwritten policy and practice, NDOC fails to adequately

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

provide HRT to transgender inmates.

**Ms. Meadows Demonstrates Medical Need But is Denied Proper Medical Care (GCS).**

84.     In or around 2018, while incarcerated in Idaho, Ms. Meadows attempted to remove her male genitalia—which she describes as a "birth defect"—with a razor.

85.     In or around 2018, while incarcerated in Idaho, Ms. Meadows attempted suicide due to gender dysphoria.

86.     When Ms. Meadows subsequently sought GCS upon return to Nevada, she was denied based in part on the determination that because she had engaged in this surgical self-treatment, which purportedly indicated that she had "mental health issues" which precluded GCS. In fact, it reflects how severe her GD is. *See Edmo*, 935 F.3d at 770 (quoting Jae Sevelius & Valerie Jenness, *Challenges and Opportunities for Gender-Affirming Healthcare for Transgender Women in Prison*, 13 Int'l J. Prisoner Health 32, 36 (2017)) ("Negative outcomes such as genital self-harm, including autocastration and/or autopenectomy, can arise when gender-affirming surgeries are delayed or denied").

87.     In or around April 2022, a doctor prescribed Ms. Meadows GCS to treat her GD.

88.     Upon information and belief, Defendant Minev knew of Ms. Meadows' serious medical need for GCS to treat her GD, including the extreme distress Ms. Meadows was undergoing due to her undertreated GD, as evidenced by her attempted self-castration.

89.     Despite having knowledge of Ms. Meadows' serious medical need, Defendant Minev also denied Ms. Meadows' grievance requesting GCS, on the basis that GCS was simply "not available to be given with the NDOC."

90.     Upon information and belief, denial of Ms. Meadows' GCS request was made pursuant to policies approved of and promulgated by Defendant Minev.

91.     Ms. Meadows was also informed by a prison psychologist named Lewis that NDOC does not cover gender confirmation surgery for inmates as it was not "within the budget."

14

**Ms. Mendoza is Denied Proper Medical Care (GCS).**

92.    In November and December, 2020, Ms. Mendoza requested GCS through kites to Defendants Gittere and Drummond.

93.    Upon information and belief, Defendants Gittere and Drummond had knowledge of the serious medical need for GCS to treat Ms. Mendoza's GD.

94.    Upon information and belief, Defendants Gittere and Drummond denied those requests.

95.    Upon information and belief, Defendants Gittere and Drummond did not provide medical justification for those denials.

96.    Upon information and belief, denial of Ms. Mendoza's GCS request was made pursuant to policies approved of and promulgated by Defendant Minev.

**Ms. Meadows is Denied Adequate Medical Care (HRT).**

97.    On or about December 2021, Defendant Perkins withheld Ms. Meadows' HRT prescriptions for four weeks.

98.    Although Ms. Meadows' HRT resumed, Defendant Perkins again discontinued it and prevented Ms. Meadows from receiving HRT on or about June 4, 2022.

99.    Nurses informed Ms. Meadows that her HRT prescriptions were at LCC, but that they could not provide Ms. Meadows with them because of Defendant Perkins' orders.

100.    As a result of these denials of treatment, Ms. Meadows suffered extreme emotional distress, including suicidal ideation and self-harm, as well as physical distress including cramps and reduction of breast size.

**Ms. Mendoza is Denied Proper Medical Care (HRT).**

101.    On or around June 2021, Ms. Mendoza was diagnosed with GD by Dr. Martin and was prescribed HRT.

102.    Upon information and belief, Defendant Exum knew that Ms. Mendoza had been prescribed HRT by a medical professional.

103.    Rather than complying with Dr. Martin's diagnosis and treatment plan,

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Defendant Exum prescribed Ms. Mendoza psychotropic drugs instead of prescribing HRT to treat Ms. Mendoza's GD.

104.    Defendant Exum told Ms. Mendoza that she must take psychotropic medicine for a period of two years before she could be prescribed HRT, even though this is not an appropriate medical treatment for GD.

105.    Upon information and belief, beginning in June 2021, Defendant Exum prevented Ms. Mendoza's prescribed hormone doses from reaching or otherwise being administered to Ms. Mendoza while she was housed at ESP.

106.    As a result of this denial of treatment, Ms. Mendoza suffered extreme emotional distress, including suicidal ideation and self-harm.

107.    In or about January, 2023, Ms. Mendoza has begun receiving HRT at HDSP in pill form, rather than her preferred method of administration (injection).

**MS. MEADOWS IS DENIED PROPER MEDICAL CARE (RAPE INJURIES).**

108.    Due to the sexual abuse she endured during her incarceration in NDOC facilities, Ms. Meadows has suffered several physical injuries, including but not limited to rectal prolapse.

109.    In or about September and October 2021, Ms. Meadows requested medical attention for these injuries, but was denied by Defendants Rambur and Minev.

110.    On or about October 6, 2021, Ms. Meadows met with Defendant Saunders for potential medical treatment of these rape injuries.

111.    Rather than provide diagnosis or treatment, Defendant Saunders had a correctional officer escort Ms. Meadows from her office.

112.    Before kicking Ms. Meadows out of the office, Defendant Saunders intentionally and unambiguously misgendered Ms. Meadows, demonstrating that her lack of treatment was not for any medical reason, but was rather due to animus against Ms. Meadows for being transgender.

/ / /

16

**NDOC EMPLOYEES FAIL TO PROTECT PLAINTIFFS FROM MULTIPLE SEXUAL ASSAULTS.**

*October 2020*

113.    In or about September or October 2020, Ms. Mendoza requested that Defendant Rivera not house her with inmate Jimmy Burgos at ESP, expressing to Defendant Rivera a fear that Burgos would sexually assault her.

114.    Ms. Mendoza also expressed these concerns to Defendants Gittere and Daniels, asking them not to house her with Burgos.

115.    On or about October 6, 2020, Defendant Rivera forced Ms. Mendoza to move into the same cell as Burgos under threat of being written up for refusing to house.

116.    On or about October 7, 2020, Burgos sexually assaulted Ms. Mendoza.

*October-November 2021*

117.    In or around October, 2021, Ms. Meadows began to experience sexual abuse committed by inmate Michael Williams.

118.    Ms. Meadows notified NDOC employees, including Defendants Hartman and Striplin, of this sexual abuse on several occasions in October 2021 and November 2021.

119.    Despite having knowledge of this situation, Defendants Hartman and Striplin did nothing to remedy it.

120.    The sexual abuse, which could have been ended by separating Ms. Meadows and Williams, continued for over a month.

*Ms. Meadows Is Transferred to ESP Against Her Wishes*

121.    In or around December, 2021, Ms. Meadows was transferred to ESP.

122.    Upon arrival, Ms. Meadows informed Defendant Cooke, Defendant Reubart, and Defendant Drummond that she was not safe being housed at ESP due to the high likelihood she would be sexually assaulted, and requested to be moved to another facility or unit.

123.    Ms. Meadows was not transferred to another facility or unit.

124.    Subsequently, Ms. Meadows suffered numerous sexual assaults at ESP.

/ / /

17

*Incidents Beginning December 2021*

125.    In or around December 2021, Defendant Cooke forced Plaintiffs to live in Unit 5B Protective Custody, where they were subjected to daily sexual harassment, death threats, and bullying.

126.    Plaintiffs informed Defendant Cooke that they could not be housed in this unit because it contained known sex offenders, violent gang members, and known enemies of Plaintiffs, including known sexual abuser Peter Kefalas and an inmate who had previously threatened to murder Ms. Meadows—Matthew Williams—which would subject them to sexual abuse and violence.

127.    Despite informing Defendant Cooke of their concerns in December 2021 and January 2022, Defendant Cooke did not house Plaintiffs in a different unit.

128.    Instead, Defendant Cooke told Ms. Meadows that she was a "sex offender" and that she "deserved" to be assaulted by other inmates.

129.    Subsequently, Plaintiffs were sexually abused, harassed, and assaulted by other inmates in Unit 5B Protective Custody.

*May 2022 Incident*

130.    On or around May 20, 2022, Plaintiffs were sexually abused, assaulted, harassed and coerced by multiple inmates on the tier at ESP for over an hour and a half.

131.    Prior to this incident, Plaintiffs warned Defendant Cooke and Defendant Mauro that they feared being assaulted on the tier at ESP.

132.    Defendants Adams and Harry—despite being correctional officers with a duty to intervene and stop these attacks—did not intervene and instead watched and laughed as Plaintiffs were assaulted, even though these attacks were captured on multiple security cameras.

133.    Defendants Adams and Harry knew of and disregarded this excessive risk to inmate safety, as they personally witnessed Plaintiffs being attacked but did nothing.

134.    Upon information and belief, Defendant Adams later joked to other inmates about the abuse Plaintiffs endured under his watch.

*Incidents After June 2022*

135.    In or around June and July 2022, Defendant Cooke moved known enemies of Plaintiffs into Plaintiffs' unit.

136.    Upon information and belief, Defendant Cooke knew that these inmates were enemies of Plaintiffs, but moved them into Plaintiffs' unit with the intent to cause harm to Plaintiffs.

137.    Defendant Cooke stated to Ms. Meadows that Ms. Meadows was a sex offender and therefore deserved to be raped.

138.    Defendant Cooke refused to house Plaintiffs away from their enemies.

139.    These enemies of Plaintiffs subsequently harassed, threatened, and assaulted Plaintiffs.

**NDOC EMPLOYEES REPEATEDLY RETALIATE AGAINST PLAINTIFFS FOR FILING GRIEVANCES AND HARASS THEM FOR BEING TRANSGENDER.**

140.    Throughout their incarceration in NDOC facilities, Plaintiffs suffered abuse at the hands of several NDOC employees, ranging from being misgendered and insulted, to being subjected to unwarranted punishment through means such as confiscating "female" items and unjustified strip searches.

***Employees at LCC Retaliate Against Ms. Meadows by Performing Cross-Gender Strip Searches and Harassing Her***

141.    Early in incarceration at LCC, Ms. Meadows informed prison officials at LCC that she did not feel safe or comfortable being strip-searched by male corrections officers.

142.    Nevertheless, on or about May 21, 2020, Ms. Meadows was subjected to a cross-gender strip search by Defendant Tobler, where Defendant Tobler forced her to lift her genitals and separate her buttocks.

143.    These searches caused Ms. Meadows' mental health to worsen, as they inflicted wanton pain upon her.

/ / /

*Employees at NNCC Retaliate Against Ms. Meadows*

144.    On or about April 2021, Defendant Rambur threatened to reduce Ms. Meadows' hormone treatment if she continued to file grievances and complaints regarding medical care.

145.    Ms. Meadows continued to assert her right to file grievances and complaints regarding her medical care.

146.    Upon information and belief, Defendant Rambur prevented Ms. Meadows from receiving appropriate doses of hormones for HRT in and around 2021.

147.    In or around April, 2021, Defendant Flamm singled Ms. Meadows out of the hundreds of inmates in the vicinity to be taken to the shower and strip searched.

148.    Defendant Flamm subjected Ms. Meadows to the humiliating and degrading experience of being strip-searched by a male.

149.    Upon information and belief, Defendant Flamm did this in retaliation for a 2014 lawsuit filed by Ms. Meadows.

150.    In or around May 2021, Defendant Breitenbach requested that Ms. Meadows take one of her sexual abusers, Robert Spahr, off of her enemies list so that Spahr could come out to the yard.

151.    Ms. Meadows agreed to do so.

152.    However, in June 2021, Ms. Meadows was subsequently forbidden from using the yard because Spahr was in the yard.

153.    By "tricking" Ms. Meadows into giving up her yard privileges, Defendant Breitenbach retaliated against Ms. Meadows for the exercise of her right to grieve.

*Defendants Jeremy and Renee Tafelmeyer Retaliate Against Ms. Meadows at NNCC*

154.    In or about March, 2021, Defendant Renee Tafelmeyer entered Ms. Meadows' cell, tore down Ms. Meadows's personal pictures, and confiscated Ms. Meadows' female clothing items.

155.    Defendant Renee Tafelmeyer told Ms. Meadows that she was "sick of seeing bras and panties" on Ms. Meadows' wall, "this is a male prison and you are not a

female" before telling Ms. Meadows that she was "confused and need mental health treatment."

156.    Shortly thereafter, Defendant Jeremy Tafelmeyer retaliated against Ms. Meadows by searching her cell, destroying her property, and confiscating female items pink colored items.

157.    During this search, Defendant Jeremy Tafelmeyer lunged at Ms. Meadows, claiming that Ms. Meadows had threatened his wife, Defendant Renee Tafelmeyer.

158.    Defendant Jeremy Tafelmeyer further threatened Ms. Meadows, stating that if she ever threatened Defendant Renee Tafelmeyer again, he would hit Ms. Meadows' head "against every wall in the unit."

159.    In or around April, 2021, Defendants Jeremy and Renee Tafelmeyer also retaliated against Ms. Meadows by writing her up multiple times, even though Ms. Meadows had not broken any rules.

160.    In or around April, 2021, Defendant Renee Tafelmeyer threatened to take away Ms. Meadows' mattress as retaliation for filing a complaint against her.

161.    Several days later in April, 2021, Defendants Jeremy and Renee Tafeleyer again searched Ms. Meadows' cell.

162.    Several days later in April, 2021, Defendant Renee Tafelmeyer asked Ms. Meadows if "she was still filing complaints" against her or if Ms. Meadows had "learned her lesson yet."

163.    In or around June 2021, Defendant Renee Tafelmeyer approached Ms. Meadows and told Ms. Meadows that she had heard Ms. Meadows had filed a grievance against her and was suing her, then threateningly stated that "it would be unfortunate" if Ms. Meadows had in fact done those things and that Defendant Renee Tafelmeyer stated that she wanted to confront Ms. Meadows.

164.    In or around June 2021, Defendants Renee Tafelmeyer and Flamm observed Ms. Meadows and her boyfriend, Kenshawn Maxey, hugging and kissing as Maxey attempted to console Ms. Meadows after she had been sexually harassed and abused.

165. Defendants Renee Tafelmeyer and Flamm retaliated against Ms. Meadows by placing her in segregation for displaying affection toward Maxey.

166. Defendants Renee Tafelmeyer and Flamm further retaliated against Ms. Meadows by having her charged with a felony for displaying affection toward Maxey.

***Employees at ESP Retaliate Against Plaintiffs***

167. Defendant Cooke took adverse actions against Plaintiffs in multiple ways: by taking away Ms. Meadows' personal grooming items (razors); by moving Plaintiffs' known enemies into their unit and refusing Plaintiffs' requests to move; by telling Plaintiffs' mental health providers not to provide mental health services to Plaintiffs; by harassing Plaintiffs over their names and genders; by disclosing grievance information to Plaintiffs' enemies and telling Plaintiffs' enemies that Plaintiffs had "snitched" on them; and, by threatening to deny Plaintiffs' mail and return it all to sender.

168. In 2022, Defendant Cooke further retaliated against Ms. Meadows for reporting sexual abuse and harassment—specifically threatening that if Ms. Meadows reported sexual abuse, she would be locked up in "the hole" indefinitely and "would never come out."

169. In 2022, Defendants Cooke, Drummond, and Reubart further retaliated against Plaintiffs by denying them time on the yard without justification.

170. In 2022, Defendants Cooke, Drummond, and Reubart further retaliated against Ms. Meadows by taking "level one" privileges away from her. This prevented Ms. Meadows from receiving work opportunities, programming opportunities, and accumulating good time credit.

171. Defendants Cooke, Drummond, and Reubart stated that Ms. Meadows had "nothing coming" and that they did not care "what the courts say."

172. Defendant Stubbs took adverse actions against Plaintiffs by, on or about July 5, 2022, telling Plaintiffs' enemies that Plaintiffs had "snitched" on them.

173. Defendant Mauro also took adverse actions against Plaintiffs by telling Plaintiffs' enemies that Plaintiffs had "snitched" on them.

174.    Defendants' characterization of Plaintiffs as "snitches" caused Plaintiffs' enemies to further harass and assault Plaintiffs.

175.    In July, 2022, Defendant Cooke also retaliated against Ms. Meadows by denying her access to weekly religious services with Pastor Bob which Ms. Meadows had been attending regularly without any legitimate justification for doing so.

**PLAINTIFFS ARE PROVIDED CONSTITUTIONALLY INADEQUATE CONDITIONS OF CONFINEMENT.**

*Plaintiffs Are Denied the Ability to Shower*

176.    Starting in December 2021, Defendant Cooke deprived Plaintiffs of the ability to use the shower more than 3 times per week while allowing other inmates to shower daily.

177.    During this time period, Defendant Cornutt refused to provide Plaintiffs with their designated shower times on multiple occasions.

178.    Between August 6 and August 11, 2022, Defendant Cornutt refused to permit Plaintiffs to take any showers.

179.    When Plaintiffs requested permission to shower from Defendant Cornutt, he denied permission and responded that Plaintiffs should "do everyone a favor and kill themselves."

*Plaintiffs Are Housed in a Flooded Cell in 2022*

180.    Pursuant to Administrative Regulations 486 and 487, the wardens of ESP are responsible for preventative maintenance of facilities and responding to maintenance requests.

181.    During their incarceration in the same cell at ESP, in or around June 2022 and August 2022, Plaintiffs were exposed to inadequate shelter and sanitation: specifically, the plumbing in their cell was defective and resulted in flooding their cell multiple times per day and exposing them to raw sewage.

182.    Plaintiffs notified Defendants Reubart, Drummond and Cooke that the plumbing in their cell was defective and exposed them to raw sewage.

183.    Despite that notification, Defendants Reubart, Drummond and Cooke ignored the defective plumbing and did not move Plaintiffs, causing Plaintiffs to be exposed to flooding and raw sewage in their cell for several weeks.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(DENIAL OF MEDICALLY NECESSARY CARE – GENDER CONFIRMATION SURGERY)
(By Plaintiff Meadows Against Commissioner Defendants, Medical Director Defendants, Administrator Defendants, and Defendant Minev)

184.    Plaintiffs incorporate Paragraphs 1 through 183 of this Complaint as if fully set forth in this section.

185.    A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

186.    Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

187.    This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* at 104-105.

188.    To establish an Eighth Amendment violation, Plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference. *Snow v. McDaniel,* 681 F.3d 978, 985 (9th Cir. 2012).

189.    To meet the objective standard, Plaintiff "must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) (702)425-8220 (F)
WWW.NVLITIGATION.COM

injury or unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

190.    To meet the subjective standard, the Plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.*

191.    A prisoner does not need to show that she was completely denied medical care; deliberate indifference can be established by prison officials' intentional interference with medical treatment. *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000).

192.    GD is a medical condition that, if not treated properly, can, and has, resulted in further significant injury and wanton infliction of pain upon Ms. Meadows.

193.    As Defendants knew of these incidents and knew—through Ms. Meadows' many kites, grievances and other communications—that they were proximately caused by GD, Defendants were on notice that GCS was medically necessary to treat Ms. Meadows' GD.

194.    This was a categorical denial of surgery which constitutes deliberate indifference. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1040 (9th Cir. 2015) (state's acknowledgement that "no California prisoner has ever received SRS" amounted to categorical denial of surgery which could constitute deliberate indifference).

195.    Further, financial constraints may not be used to justify the creation or perpetuation of constitutional violations. *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 392, 112 S. Ct. 748, 764, 116 L. Ed. 2d 867 (1992).

196.    Defendant Minev—who had responsibility for Ms. Meadows' care and knew or should have known about Ms. Meadows' serious medical needs—violated Ms. Meadows' rights through hid deliberate indifference to Ms. Meadows' serious medical needs. Specifically, he was deliberately indifferent to her serious medical need for GCS.

197.    As a result of the violation of her rights, Ms. Meadows has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Meadows is entitled to monetary, compensatory, and punitive damages, as well as

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1    attorney's fees and costs.

2          198.    The Commissioner Defendants, Medical Director Defendants, and

3    Administrator Defendants are responsible for the governance of NDOC facilities, and for

4    ensuring that Ms. Meadows' Eighth Amendment rights are not violated in the future. Ms.

5    Meadows is entitled to injunctive and declaratory relief against the Commissioner

6    Defendants, Medical Director Defendants, and Administrator Defendants.

7

8                          **SECOND CAUSE OF ACTION**
      VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE

9                                  UNITED STATES
                          PURSUANT TO 42 U.S.C. § 1983

10    (DENIAL OF MEDICALLY NECESSARY CARE – GENDER CONFIRMATION
                                    SURGERY)

11    (By Plaintiff Mendoza Against Commissioner Defendants, Medical Director Defendants,
        Administrator Defendants, Defendants Minev, Drummond, and Gittere)

12

13         199.    Plaintiffs incorporate Paragraphs 1 through 198 of this Complaint as if fully

14    set forth in this section.

15         200.    GD is a medical condition that, if not treated properly, can, and has, resulted

16    in further significant injury and wanton infliction of pain upon Ms. Mendoza.

17         201.    As Defendants knew of these incidents and knew—through Ms. Mendoza's

18    many kites, grievances and other communications —that they were proximately caused by

19    GD, Defendants were on notice that GCS was medically necessary to treat Ms. Mendoza's

20    GD.

21         202.    Defendants Minev, Drummond, and Gittere—all of whom had

22    responsibility for Ms. Mendoza's care and knew or should have known about Ms. Mendoza's

23    serious medical needs—violated Ms. Mendoza's rights through their deliberate indifference

24    to Ms. Mendoza's serious medical needs. Specifically, they were deliberately indifferent to

25    her possible need for GCS.

26         203.    As a result of the violation of her rights, Ms. Mendoza has suffered, is

27    suffering, and will continue to suffer harm and damages in an amount subject to proof, and

28    Ms. Mendoza is entitled to monetary, compensatory, and punitive damages, as well as

MCLETCHIE LAW

ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

attorney's fees and costs.

204.    The Commissioner Defendants, Medical Director Defendants, and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Mendoza's Eighth Amendment rights are not violated in the future. Ms. Mendoza is entitled to injunctive and declaratory relief against the Commissioner Defendants, Medical Director Defendants, and Administrator Defendants.

### THIRD CAUSE OF ACTION
VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(DENIAL OF MEDICALLY NECESSARY CARE – HORMONE THERAPY)
(By Plaintiff Meadows Against Commissioner Defendants, Medical Director Defendants, Administrator Defendants, Defendants Rambur, Perkins, and Minev)

205.    Plaintiffs incorporate Paragraphs 1 through 204 of this Complaint as if fully set forth in this section.

206.    Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

207.    This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* at 104-105.

208.    Prison officials exhibit a deliberate indifference to a serious medical need where a prisoner diagnosed with Gender Dysphoria is denied hormone therapy treatment as the result of a blanket rule rather than an individualized medical evaluation of the prisoner. *See* Colwell *v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014).

209.    In relying upon a medical opinion which a reasonable person would likely determine to be inferior to a treating physician's recommendation, prison officials' actions may have amounted to the denial of medical treatment, and the unnecessary and wanton infliction of pain. *Colwell*, 763 F.3d at 1069.

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

210.    Deliberate indifference occurs where prison officials and doctors deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992).

211.    Defendants Minev, Rambur, and Perkins—who had responsibility for Ms. Meadows' care and knew or should have known about Ms. Meadows' serious medical needs—violated Ms. Meadows' rights through their deliberate indifference to Ms. Meadows's serious medical needs. Specifically, he acted in deliberate indifference to Ms. Meadows's serious medical needs by ignoring Plaintiffs' treatment plans, refusing to prescribe HRT, and then by improperly administering HRT to Ms. Meadows by arbitrarily changing her hormone doses without medical indication.

212.    Prison officials' refusal to adequately administer the hormone therapy treatment prescribed to Ms. Meadows has caused Ms. Meadows to hate her body, engage in self-mutilation, engage in self-castration attempts, attempt suicide, and experience emotional distress, anxiety, depression and paranoia.

213.    Defendants Minev, Rambur and Perkins violated Ms. Meadows' rights through their deliberate indifference to Ms. Meadows' serious medical needs.

214.    As a result of the violation of their rights, Ms. Meadows has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Meadows is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs from Defendants Rambur, Minev and Perkins.

215.    The Commissioner Defendants, Medical Director Defendants, and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Meadows' Eighth Amendment rights are not violated in the future. Ms. Meadows is entitled to injunctive and declaratory relief against the Commissioner Defendants, Medical Director Defendants, and Administrator Defendants.

/ / /

/ / /

/ / /

28

**FOURTH CAUSE OF ACTION**
VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE
UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(DENIAL OF MEDICALLY NECESSARY CARE – HORMONE THERAPY)
(By Plaintiff Mendoza Against Commissioner Defendants, Medical Director
Defendants, Administrator Defendants, Defendants Minev and Exum)

216.    Plaintiffs incorporate Paragraphs 1 through 215 of this Complaint as if fully set forth in this section.

217.    Defendants Exum and Minev—both of whom had responsibility for Ms. Mendoza's care and knew or should have known about Ms. Mendoza's serious medical needs—violated Ms. Mendoza's rights through their deliberate indifference to Ms. Mendoza's serious medical needs. Specifically, they acted in deliberate indifference to Ms. Mendoza's serious medical needs by ignoring Ms. Mendoza's treatment plans, refusing to prescribe HRT, and then by improperly administering HRT to Ms. Mendoza by arbitrarily changing her hormone doses without medical indication.

218.    Prison officials' refusal to adequately administer the hormone therapy treatment prescribed to Ms. Mendoza has caused Ms. Mendoza to hate her body, engage in self-mutilation and experience emotional distress, anxiety, depression and paranoia.

219.    Although Ms. Mendoza has begun receiving HRT at HDSP, Defendants' voluntary change in position does not render Ms. Mendoza's claim for prospective relief moot, as there is reasonable expectation that denial of HRT will recur and this interim relief has not completely and irrevocably eradicated the effects of denying Ms. Mendoza HRT. *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018).

220.    Defendants Minev and Exum violated Ms. Mendoza's rights through their deliberate indifference to Ms. Mendoza's serious medical needs.

221.    As a result of the violation of their rights, Ms. Mendoza has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Mendoza is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs from Defendants Exum and Minev.

222.    The Commissioner Defendants, Medical Director Defendants, and

McLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Mendoza's Eighth Amendment rights are not violated in the future. Ms. Mendoza's are entitled to injunctive and declaratory relief against the Commissioner Defendants, Medical Director Defendants, and Administrator Defendants.

### FIFTH CAUSE OF ACTION
#### VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (DENIAL OF MEDICALLY NECESSARY CARE – TREATMENT FOR RAPE INJURIES)
#### (By Plaintiff Meadows Against Commissioner Defendants, Medical Director Defendants, Administrator Defendants, Defendants Saunders, Rambur, and Minev)

223.    Plaintiffs incorporate Paragraphs 1 through 222 of this Complaint as if fully set forth in this section.

224.    Deliberate indifference occurs where prison officials and doctors deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992).

225.    Here, Ms. Meadows informed Defendants Saunders, Rambur, and Minev about her serious medical needs—injuries suffered as a result of sexual abuse occurring in NDOC facilities.

226.    Despite knowing of this serious medical need, Defendants Saunders, Rambur, and Minev denied Ms. Meadows medically appropriate care.

227.    As a result of the violation of her rights, Ms. Meadows has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Plaintiff is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

228.    The Commissioner Defendants, Medical Director Defendants, and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Meadows's Eighth Amendment rights are not violated in the future. Ms. Meadows is entitled to injunctive and declaratory relief against the Commissioner

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

Defendants, Medical Director Defendants, and Administrator Defendants.

**SIXTH CAUSE OF ACTION**
VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE
UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(FAILURE TO PROTECT)
(By Plaintiff Meadows Against Commissioner Defendants, Administrator Defendants,
Defendants Mauro, Hartman, Reubart, Drummond, Cooke, Adams, and Harry)

229.    Plaintiffs incorporate Paragraphs 1 through 228 of this Complaint as if fully set forth in this section.

230.    Under the Eighth Amendment, prison officials have a duty to protect prisoners from sexual assault at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

231.    To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety, *i.e.*, that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 834-837.

232.    Ms. Meadows informed Defendants Mauro, Hartman, Reubart, Drummond, and Cooke that she was concerned about her safety prior to those Defendants assigning her to live with her enemies or other inmates who were likely to sexually assault them.

233.    Defendants Mauro, Hartman, Reubart, Drummond, and Cooke were aware of these excessive risks to Ms. Meadows' safety, but failed to take any action, such as reassigning Ms. Meadows or the inmates whom Ms. Meadows feared would assault her, to different cells or units.

234.    Defendants Adams and Harry were aware of these excessive risks to Ms. Meadows's safety, as they witnessed the assault taking place but failed to take any action, such as stopping the assault.

235.    Due to inaction by Mauro, Hartman, Reubart, Drummond, Cooke, Adams,

and Harry, Ms. Meadows suffered damages by repeated sexual assault perpetrated against her by other inmates.

236.    Ms. Meadows has suffered, are suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Meadows is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

237.    The Commissioner Defendants and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Meadows' Eighth Amendment rights are not violated in the future. Ms. Meadows is entitled to injunctive and declaratory relief against the Commissioner Defendants and Administrator Defendants.

**SEVENTH CAUSE OF ACTION**
VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(FAILURE TO PROTECT)
(By Plaintiff Mendoza Against Commissioner Defendants and Administrator Defendants, Defendants Rivera, Daniels, Gittere, Drummond, Mauro, Cooke, Adams, and Harry)

238.    Plaintiffs incorporate Paragraphs 1 through 237 of this Complaint as if fully set forth in this section.

239.    Under the Eighth Amendment, prison officials have a duty to protect prisoners from sexual assault at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

240.    Ms. Mendoza informed Defendants Rivera, Daniels, Gittere, Drummond, Mauro and Cooke that she was concerned about her safety prior to those Defendants assigning her to live with her enemies or other inmates who were likely to sexually assault them.

241.    Defendants Rivera, Daniels, Gittere, Drummond, Mauro and Cooke were aware of these excessive risks to Ms. Mendoza's safety, but failed to take any action, such as reassigning Ms. Mendoza or the inmates whom Ms. Mendoza feared would assault her, to different cells or units.

242.    Defendants Adams and Harry were aware of these excessive risks to Ms. Mendoza's safety, as they witnessed the assault on Ms. Mendoza taking place but failed to take any action, such as stopping the assault.

243.    Due to inaction by Defendants Rivera, Daniels, Gittere, Drummond, Mauro, Cooke, Adams, and Harry, Ms. Mendoza suffered damages by repeated sexual assault perpetrated against her by other inmates.

244.    Ms. Mendoza has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Mendoza is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

245.    The Commissioner Defendants and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Mendoza's Eighth Amendment rights are not violated in the future. Ms. Mendoza is entitled to injunctive and declaratory relief against the Commissioner Defendants and Administrator Defendants.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**
**PURSUANT TO 42 U.S.C. § 1983**
**(DENIAL OF MENTAL HEALTH TREATMENT)**
**(By Plaintiff Meadows Against Commissioner Defendants, Medical Director Defendants, Administrator Defendants, Defendants Cooke and Hayman)**

246.    Plaintiffs incorporate Paragraphs 1 through 245 of this Complaint as if fully set forth in this section.

247.    The Eighth Amendment's prohibition against cruel and unusual punishment requires that prisons provide mental health care that meets "minimum constitutional requirements." *Disability Rights Mont., Inc. v. Batista*, 930 F.3d 1090, 1097 (9th Cir. 2019) (quoting *Brown v. Plata*, 563 U.S. 493, 501, 131 S. Ct. 1910, 179 L. Ed. 2d 969 (2011)).

248.    In addition to gender dysphoria, Ms. Meadows has been diagnosed with Post Traumatic Stress Disorder ("PTSD") as a result of extensive sexual abuse during incarceration.

249.    While incarcerated at ESP, Ms. Meadows repeatedly requested mental

ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) (702)425-8220 (F)
WWW.NVLITIGATION.COM
MCLETCHIE LAW

health care from Defendant Hayman, including a trauma counselor or other medically appropriate PTSD treatment.

250.    Defendant Hayman knew that Ms. Meadows' mental health issues, including PTSD, constituted a serious medical condition, but nevertheless denied her care.

251.    Upon information and belief, Defendant Hayman refused to treat Ms. Meadows due to animus toward Ms. Meadows.

252.    Upon information and belief, on or about July 5, 2022, Defendant Cooke directed ESP's mental health providers to not provide mental health services to Ms. Meadows.

253.    As a result of the violation of her rights, Ms. Meadows has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Meadows is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

254.    The Commissioner Defendants, Medical Director Defendants, and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Meadows' Eighth Amendment rights are not violated in the future. Ms. Meadows is entitled to injunctive and declaratory relief against the Commissioner Defendants, Medical Director Defendants, and Administrator Defendants.

### NINTH CAUSE OF ACTION
#### VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
#### PURSUANT TO 42 U.S.C. § 1983
#### (SUBJECTION TO SEXUAL HARASSMENT VIA STRIP SEARCHES)
#### (By Plaintiff Meadows Against Commissioner Defendants and Administrator Defendants, Defendants Tobler, Widmar, and Preston)

255.    Plaintiffs incorporate Paragraphs 1 through 254 of this Complaint as if fully set forth in this section.

256.    "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012).

257.    Conduct that begins "as an invasive procedure that served a legitimate penological purpose" may become sexually abusive upon a showing that "the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Bearchild v. Cobban*, 947 F.3d 1130, 1144, 1145 (9th Cir. 2020).

258.    Despite her protests, Ms. Meadows was repeatedly made to strip and shower in front of male inmates and corrections officers, and be subjected to unwarranted and humiliating cross-gender strip searches, including by Defendants Tobler, Widmar, and Preston.

259.    These strip searches caused Ms. Meadows to suffer unnecessary and wanton infliction of pain.

260.    These strip searches exceeded the scope of what was required to satisfy any institutional concerns.

261.    As a result of the violation of her rights, Ms. Meadows has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Meadows is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

262.    The Commissioner Defendants and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Meadows' Eighth Amendment rights are not violated in the future. Ms. Meadows is entitled to injunctive and declaratory relief against the Commissioner Defendants and Administrator Defendants.

**TENTH CAUSE OF ACTION**
VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(RETALIATION)
(By Plaintiff Meadows Against Commissioner Defendants, Medical Director Defendants and Administrator Defendants, Defendants Rambur, Cooke, Mauro, Stubbs, Reubart, Breitenbach, R. Tafelmeyer, J. Tafelmeyer, Drummond, and Flamm)

263.    Plaintiffs incorporate Paragraphs 1 through 263 of this Complaint as if fully

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

1 set forth in this section.

2     264.    Prisoners have a First Amendment right to file prison grievances and to

3 pursue civil rights litigation in the courts. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th

4 Cir. 2004).

5     265.    To state a viable First Amendment retaliation claim in the prison context, a

6 plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against

7 an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

8 the inmate's exercise of her First Amendment rights, and (5) the action did not reasonably

9 advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

10     266.    Upon information and belief, Defendants took the actions described above

11 (*see generally* ¶¶ 140-183, *supra*) in response to Ms. Meadows filing grievances and

12 lawsuits.

13     267.    Defendants' retaliatory conduct chilled Ms. Meadows' exercise of their

14 First Amendment rights.

15     268.    Defendants' retaliatory conduct did not reasonable advance legitimate

16 correctional goals, but was rather intended to punish Ms. Meadows for exercising her First

17 Amendment rights.

18     269.    As a result of the violation of their rights, Ms. Meadows has suffered, is

19 suffering, and will continue to suffer harm and damages in an amount subject to proof, and

20 Ms. Meadows is entitled to monetary, compensatory, and punitive damages, as well as

21 attorney's fees and costs.

22     270.    The Commissioner Defendants, Medical Director Defendants, and

23 Administrator Defendants are responsible for the governance of NDOC facilities, and for

24 ensuring that Ms. Meadows' First Amendment rights are not violated in the future. Ms.

25 Meadows is entitled to injunctive and declaratory relief against the Commissioner

26 Defendants, Medical Director Defendants, and Administrator Defendants.

27 / / /

28 / / /

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) - (702)425-8220 (F)
WWW.NVLITIGATION.COM

**ELEVENTH CAUSE OF ACTION**
VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION OF THE
UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(RETALIATION)
(By Plaintiff Mendoza Against Commissioner Defendants, Medical Director Defendants
and Administrator Defendants,  Defendants Cooke, Mauro, Stubbs, Reubart)

271.    Plaintiffs incorporate Paragraphs 1 through 271 of this Complaint as if fully set forth in this section.

272.    Upon information and belief, Defendants took the actions described above (*see generally* ¶¶ 140-183, *supra*) against Ms. Mendoza for filing grievances and lawsuits.

273.    Defendants' retaliatory conduct chilled Ms. Mendoza's exercise of their First Amendment rights.

274.    Defendants' retaliatory conduct did not reasonable advance legitimate correctional goals, but was rather intended to punish Ms. Mendoza for exercising her First Amendment rights.

275.    As a result of the violation of their rights, Ms. Mendoza has suffered, is suffering, and will continue to suffer harm and damages in an amount subject to proof, and Ms. Mendoza is entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

276.    The Commissioner Defendants, Medical Director Defendants, and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Ms. Mendoza's First Amendment rights are not violated in the future. Ms. Mendoza is entitled to injunctive and declaratory relief against the Commissioner Defendants, Medical Director Defendants, and Administrator Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**TWELFTH CAUSE OF ACTION**
VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(CONDITIONS OF CONFINEMENT)
(By All Plaintiffs Against Commissioner Defendants and Administrator Defendants, Defendants Reubart, Drummond, Cooke, and Cornutt)

277.    Plaintiffs incorporate Paragraphs 1 through 276 of this Complaint as if fully set forth in this section.

278.    Prison officials "have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018).

279.    To determine whether the conditions of confinement meet the subjective prong of the Eighth Amendment analysis, prisoners must establish deliberate indifference to the unconstitutional conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

280.    "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. Cnty. Of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).

281.    Despite repeated requests to Defendants Reubart, Drummond, and Cooke that their cell's plumbing problems be fixed, Plaintiffs were forced to live in a cell that routinely flooded with water and sewage for several weeks.

282.    Despite repeated requests to allow them to shower at the same frequency as other inmates, Defendant Cornutt refused to allow Plaintiffs access to the shower.

283.    As a result of the violation of their rights by Defendants, Plaintiffs have suffered, are suffering, and will continue to suffer harm and damages in an amount subject to proof, and Plaintiffs are entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

284.    The Commissioner Defendants and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Plaintiffs' Eighth Amendment rights are not violated in the future. Plaintiffs' entitled to injunctive and

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

declaratory relief against the Commissioner Defendants, Medical Director Defendants, and Administrator Defendants.

### THIRTEENTH CAUSE OF ACTION
#### VIOLATION OF THE FOURTEENTH AMENDMENT
#### PURSUANT TO 42 U.S.C. § 1983
#### (EQUAL PROTECTION)
(By All Plaintiffs Against Commissioner Defendants, Medical Director Defendants and Administrator Defendants, Defendants Rambur, Cooke, Mauro, Daniels, Stubbs, Reubart, Breitenbach, R. Tafelmeyer, J. Tafelmeyer, Drummond, Williams, and Flamm)

285.    Plaintiffs incorporate Paragraphs 1 through 284 of this Complaint as if fully set forth in this section.

286.    To state an equal protection claim, Plaintiff must demonstrate that defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," or that defendants purposefully treated her differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

287.    When a defendant's action is based upon the fact that the Plaintiff fails "to conform to socially-constructed gender expectations," the defendant has engaged in gender-based discrimination.

288.    Upon information and belief, Defendants took the actions described above (*see generally* ¶¶ 140-183, *supra*) against Plaintiffs due to animus toward Plaintiffs for being female transgender inmates in a male prison.

289.    While she was incarcerated at NNCC, Defendant Daniels refused to allow Ms. Meadows the same commissary and property as female inmates, effectively singling her out and discriminating against her based on her gender expression in a male prison.

290.    While she was incarcerated at NNCC, Defendant Williams confiscated Ms. Meadows' curling iron and hair dryer.

291.    While she was incarcerated at LCC, Defendant LBI refused to provide Ms. Meadows with bras and female underwear, stating that she is "a male" with "a ding dong

down there" while pointing to Ms. Meadows' crotch. This forced Ms. Meadows to go without underwear for a substantial period of time.

292.    As a result of the violation of their rights by Defendants, Plaintiffs have suffered, are suffering, and will continue to suffer harm and damages in an amount subject to proof, and Plaintiffs are entitled to monetary, compensatory, and punitive damages, as well as attorney's fees and costs.

293.    The Commissioner Defendants, Medical Director Defendants, and Administrator Defendants are responsible for the governance of NDOC facilities, and for ensuring that Plaintiffs' Fourteenth Amendment rights are not violated in the future. Plaintiffs are entitled to injunctive and declaratory relief against the Commissioner Defendants, Medical Director Defendants, and Administrator Defendants.

### FOURTEENTH CAUSE OF ACTION
VIOLATION OF THE CONSTITUTION OF THE STATE OF NEVADA
(FREE SPEECH)
(By All Plaintiffs Against Defendants Rambur, Cooke, Mauro, Stubbs, Reubart, Breitenbach, R. Tafelmeyer, J. Tafelmeyer, Drummond, and Flamm)

294.    Plaintiffs incorporate Paragraphs 1 through 293 of this Complaint as if fully set forth in this section.

295.    Plaintiffs' rights to speech, including filing grievances and accessing the courts, were impermissibly restricted, chilled, deterred and inhibited by the actions of Defendants.

296.    Article 1, Section 9 of the Constitution of the State of Nevada provides "[e]very citizen may freely speak, write, and publish his sentiments on all subjects . . . and no law shall be passed to restrain or abridge the liberty of speech . . . ."

297.    Defendants' actions, as alleged herein, constitute violations of Plaintiffs' rights under Article 1, Section 9 of the Constitution of the State of Nevada.

298.    Plaintiffs are entitled to monetary, compensatory, and punitive damages from Defendants.

299.    It has been necessary for Plaintiffs to retain the services of attorneys to

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

pursue this matter, and Plaintiffs are entitled to attorney's fees, costs, and prejudgment interest.

300.    As a direct and proximate result of Defendants' violations of the Nevada Constitution, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof.

**FIFTEENTH CAUSE OF ACTION**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(By All Plaintiffs Against Defendants Rambur, Cooke, Mauro, Stubbs, Reubart, Breitenbach, R. Tafelmeyer, J. Tafelmeyer, Drummond, Minev, Williams, Daniels, Gittere, and Flamm)

301.    Plaintiffs incorporate Paragraphs 1 through 300 of this Complaint as if fully set forth in this section.

302.    Defendants engaged in extreme and outrageous conduct by retaliating against Plaintiffs and forcing them to live as transgender women in a men's prison with inadequate medical care, inadequate protection from other inmates, and inadequate living conditions.

303.    Defendants intentionally caused Plaintiffs to suffer severe emotional distress by conducting themselves with reckless disregard for inflicting emotional distress on Plaintiffs.

304.    As a proximate result of Defendants' conduct, Plaintiffs have suffered severe and extreme emotional distress.

305.    As a result of Defendants' actions, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to declaratory relief against Defendants, attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

**SIXTEENTH CAUSE OF ACTION**
NEGLIGENCE
(By All Plaintiffs Against Defendants Reubart, Drummond, Gittere, and Cooke)

306.    Plaintiffs incorporate Paragraphs 1 through 305 of this Complaint as if fully

MCLETCHIE LAW
ATTORNEYS AT LAW
602 SOUTH TENTH STREET
LAS VEGAS, NV 89101
(702) 728-5300 (T) / (702) 425-8220 (F)
WWW.NVLITIGATION.COM

41

set forth in this section.

307.    Defendants have a duty to maintain adequately sanitary and safe conditions of confinement for those under their custody.

308.    Defendants breached that duty by permitting the plumbing in Plaintiffs' cell to break and flood their room, exposing them to raw sewage and unsanitary conditions.

309.    As a proximate and legal result of Defendants' negligent maintenance of the pluming of Plaintiffs' cell, Plaintiffs have suffered damages.

310.    As a result of Defendants' actions, Plaintiffs have suffered, are suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiffs are entitled to declaratory relief against Defendants, attorney's fees and costs from Defendants, and monetary, compensatory, and punitive damages from Defendants.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter a judgment in their favor and against Defendants jointly and severally, and award:

a.    A trial by jury on all issues;

b.    Declaratory and injunctive relief;

c.    Monetary, compensatory, and punitive damages allowable under law in an amount to which the Plaintiffs is found to be entitled;

d.    An additional amount to account for additional taxes Plaintiffs may be called upon to pay in relation to awards made herein;

e.    Attorney's fees and costs incurred herein pursuant to 42 U.S.C. § 1988 and all applicable statutory authority; and

f.    Entry of such other and further relief the Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues in this action the extent authorized by the law.

RESPECTFULLY SUBMITTED this 31st day of March, 2023.

/s/ Leo S. Wolpert
Margaret A. McLetchie, Nevada State Bar No. 10931
Leo S. Wolpert, Nevada State Bar No. 12658
MCLETCHIE LAW
602 South Tenth St.
Las Vegas, NV 89101
Telephone: (702) 728-5300
Fax: (702) 425-8220
Email: maggie@nvlitigation.com
Counsel for Plaintiffs